Mr. Justice Humphreys
delivered the opinion of the court:
Complainant Hartley exhibits his bill, claiming an equitable lien on trust-property, for the sum of twelve hundred dollars. Evan Lyons, of this District, was indebted to the savings and trust company by note for the sum of 834,000, dated July 27,1872, due in twelve months, secured by deed of trust on land in said District. The note matured, and, not being paid, the land was advertised to be sold. Stickney and Alvord were the trustees. Stickney and Alvord were both officers in the company, Stickney being actuary. The maker of the note, Lyons, applied for time to pay, and i)rocured the complainant to advance him twelve hundred dollars to make a payment on the note. The said sum was deposited in the house of the company, and the said Stickney, actuary of the company, gave to complainant a certificate, reciting that “ Messrs. Hartley & Bro. have deposited with this company twelve hundred dollars, which will be subject to his check from the cash payment received from Evan Lyons’s property on Bock Creek.” This is dated at the office of the company, Washington, December 22,1873. The property intended is the same conveyed by Lyons in trust. The land has been sold by Stickney as trustee, and bought by the commissioners, on account of the debt, for a sum less than the amount due on- the note. Complainant asks that the commissioners be decreed to pay the amount of the said deposit, and in default thereof that a decree be made for the sale of the land to pay the complainant’s demand asa preferred lien. The bill does not allege that a resale of the land would yield a larger amount than it did at the sale made, or that there was any irregularity in the sale, or unfairness on the part of trustee or commissioners. The complainant has rather chosen, *500 by himself ancl solicitor, to rest his claim upon the idea of subrogation in' preference to the particular security, assuming that the certificate of the actuary placed him in the front of the company to the amount of his deposit, and in advance of all other depositors in the office of the company. This case involves the question of the extent of the incorporated institution to transact business, and what business it could transact, by which everybody who dealt with it would be bound. There was a deposit in this case of twelve hundred dollars by complainant, and for this amount he has a claim upon the assets of the company. The reception on deposit was an act for which the actuary could, probably, bind the company. But when the actuary undertook to go beyond the mere act of receiving a deposit and making a contract which would bind tbe institution, as a cashier or president of a regular banking-house could do, a different question arises, and we must look to the charter for his authority and the extent of the power of any officer of this company. There has been no charter of any institution drawn with more care, and circumspection, and guards than the incorporation of the Freedman’s Savings and Trust Company. That many persons have loosely viewed it as a banking institution, to be governed by the rules applicable to a bank of issue and loans, as ordinarily carried on, is not to be wondered at. But it cannot, legally or equitably, be viewed in the light of any other than an institution of deposit for the safe-keeping of funds got together by the industry, economy, and saving of those who were not presumed to be acquainted with the ways of financiering. It was not a banking institution; it was a trust company, for the purpose of keeping in safety the savings of a particular class of citizens. It is true that loans or investments were authorized; but they were authorized by a certain process, which experience had proved was safe and sure, and by no means were those who were made trustees at any legal liberty to expand into the uncertain realms of speculative operations. The institution had officers, but those officers were denominated by other names than are ordinarily used in application to regular banking institutions. In the case of United States vs. Union Pacific Railroad Company, 91 United States Supreme Court Reports, the justice deliv *501 «ring the opinion of the court — which was unanimous — uses the following language:
<l In construing an act of Congress, we are not at liberty to recur to the views of individual members in detail, nor to consider the motives which influence them to vote for or against its passage. The act itself speaks the will of Congress, and this is to be ascertained from the language used. But courts, in construing a statute, may, with propriety, recur to the history of the times when it was passed; and this is frequently necessary, in order to ascertain the reason as well as the meaning of particular provisions in it.”
It cannot be considered as judicial intrusion to remark that the history of the times points to the stubborn fact that •the funds to be deposited were not in the nature of joint stock for the ordinary speculative purposes. The depository was to be a savings trust-place, from which the funds were not to be withdrawn except by the provisions of the statute. The money was originally loaned, in this case, on such security as a trust company might loan money. The funds were those of a peculiarly laboring people. They had been taught to labor from their infancy. They had an idea that the Government which asserted their natural right to freedom would provide for the security of the proceeds of their labor, which proceeds, for the first time in their lives, they had, organically, a right to control. They freely deposited the earnings of their industry in the savings and trust compauy. The Government in which they confided did hem in and circumscribe the powers and authority of the officers, and everybody who dealt with the institution ‘was advertised of the extent to which the officers could go. The question of good faith in the officers is not here involved. What was- the authority conferred by the act ■organizing the institution ? What was the object of the incorporation óf the institution, and what significance is there -in the very name and title of the act? The objects of the institution had been taught by the highest organic authority that they had no rights; and it must be said in their behali that they quietly submitted to that declaration, till the same -organic authority issued a contrary pronunciamento to the world that these people must be free. They did get free; *502 and this institution was immediately established for the deposit of the earnings of their labor. They soon deposited their millions. Counsel have denominated this company as a bank. Ic was not a bank; it was a company, with'trust powers, circumscribed in its operations by the statute which created it. Has the actuary the power to change a security by substituting a creditor of the institution in the place of the institution itself? We must keep steadily in view the nature and imrpose of the trust company. If the amount deposited was to operate as a payment on the note, then the depositor could not claim the right of checking it out. The certificate itself did not undertake to express a general deposit, but a special one, which should be subject to check out of the proceeds of a particular security. This security the company held in trust to cover the amount of money loaned to the original debtor; or, rather, the loan was made of the funds held in trust as an investment in notes or bonds, secured by mortgage. A payment in money was certainly competent to be made on the note, and would, pro tanto, extinguish the debt. But the actuary had no power to change the security. The whole transaction appears to have proceeded on the idea of substituting Hartley & Bro. to the place of the company, even in preference, for twelve hundred dollars. That could not be done in the loose mode adopted. Whatever may be the rights of complainants, they cannot ask a court of equity to require the commissioners to prefer their claim to that of the trust company or other creditors. The term bank is used nowhere in the charter. Provisions are made in similar terms to the rules regarding trustees and guardians of infants and minors. The wards were authorized to labor for themselves and bring their savings to the great reservoir, and, when placed there, those savings were to be held in trust, not to be used in the ordinary mode of banking speculations. The money deposited was the capital of the company, that company being a trust company, to save by loaning, investing exclusively as prescribed by the charter. No power was given to contract a debt or an obligation, save the chartered power. There could be no possible contingency in which it would be proper to contract a debt, for the money was already deposited, to *503 be loaned or invested in a prescribed way. The profits arising from the loans or investments would, in contemplation of the charter, be sufficient to defray the expenses of the institution, and result in savings to the depositors of the original fund. Tfy'e actuary had his duties to perform; the board had its duties. The powers of the actuary were subordinate to the powers of the board. If he went beyond his powers, innocently though it may be, the cestuis que trust are not to be injured, unless they consented to the excess of action. Of this there is no allegation or proof. Equity cannot relieve against a positive injunction of the law. We find the statutory charter, and we must construe it. The complainant acted in good faith; so did the actuary. There would be no equity in requiring the cestuis que trust to abandon their legal rights, which legal rights authorize them to insist upon the strict fulfillment of the charter. By that charter they live or die. That charter was published to the world, and all who dealt with the company did so with constructive notice of its powers. We conclude that the actuary had no authority to bind the. company by the certificate which he gave, that that certificate did not substitute or subrogate the complainant to a preference in the case before us, and the bill must be dismissed for want of equity, but without prejudice.
Bill dismissed without prejudice.